UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL CASE NO:_____

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AUSIMONT INDUSTRIES, INC., for itself and on behalf of predecessor entities COMPO INDUSTRIES, INC., PANDEL-BRADFORD, INC., and PANDEL, INC., BASF Corporation, BOSTON AND MAINE CORP., for itself and on behalf of predecessor entity BOSTON AND MAIN RAILROAD, BROWNING-FERRIS INDUSTRIES, INC. (MASSACHUSETTS) for itself and on behalf of predecessor entities BARRY BROS., INC., GREENWOOD DISPOSAL COMPANY, INC., and MILLER DISPOSAL SERVICES, INC., ALLIED WASTE SYSTEMS, INC., for itself and on behalf of predecessor entity RELIABLE RUBBISH DISPOSAL, INC., BFI WASTE SYSTEMS OF NORTH AMERICA, LLC, for itself and on behalf of predecessor entity NEW ENGLAND NUCLEAR CORP., BTU INTERNATIONAL, INC., E.I. du Pont de NEMOURS AND COMPANY, HONEYWELL INTERNATIONAL, INC., MALLINCKRODT, LLC, for itself and on behalf of predecessor entity INTERNATIONAL MINERALS AND CHEMICAL CO. on behalf of its subsidiary KINGSTON STEEL DRUM CO., M/A-COM, INC., for itself and on behalf of predecessor entity MICROWAVE ASSOCIATES, INC., RAYTHEON CO., SEARS, ROEBUCK AND CO., TEXTRON SYSTEMS CORP., for itself and on behalf of predecessor entity AVCO CORP., TOWN OF TEWKSBURY, VERIZON NEW ENGLAND, INC. f/k/a NEW ENGLAND TELEPHONE AND TELEGRAPH CO., WASTE MANAGEMENT OF MASSACHUSETTS, INC., for itself and on behalf of predecessor entity V. CANELAS CO., INC., WASTE MANAGEMENT DISPOSAL SERVICES OF MASSACHUSETTS, INC., for itself and on behalf of predecessor entity SCA DISPOSAL SERVICES OF NEW ENGLAND, INC. – EASTERN DIVISION, WASTE MANAGEMENT OF NEW HAMPSHIRE, INC., for itself and on behalf predecessor entity P&T CONTAINER SERVICE CO., INC., ZENECA, INC., for itself and on behalf of predecessor entity POLYVINYL CHEMICALS, INC. a/k/a POLYVINYL | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) **COMPLAINT** |

| | |
|---|---|
| CHEMICAL INDUSTRIES, EMHART INDUSTRIES, INC., for itself and on behalf of predecessor entity UNITED SHOE MACHINERY CORP. (BOSTIK DIVISION), HOLT & BUGBEE CO., NATIONAL GRID USA, for itself and on behalf of subsidiaries NEW ENGLAND POWER CO. & MASSACHUSETTS ELECTRIC CO., LOCKHEED MARTIN CORP., for itself and on behalf of predecessor entity RCA, TEWKSBURY STATE HOSPITAL (MASSACHUSETTS DEPT. OF PUBLIC HEALTH), THE GILLETTE CO., 3M CO. (f/k/a MINNESOTA MINING AND MANUFACTURING CO.), AMERICAN SCIENCE AND ENGINEERING, INC., ANTON'S CLEANERS, INC., CABOT CORP., LEGGETT & PLATT, INC., for itself and on behalf of predecessor entities CAMBRIDGE TOOL AND MANUFACTURING, CO., INC., and JAPENAMELAC CORP., COMPUTERVISION LLC, FISONS CORP., FC MEYER PACKAGING, LLC and MILLEN INC. on behalf of themselves and MILLEN INDUSTRIES, INC. a/k/a FRANK C. MEYER CO., SPX CORP. for itself and on behalf of predecessor entity GCA CORP., GENERAL LATEX AND CHEMICAL CORP., HEWLETT-PACKARD COMPANY, for itself and on behalf of predecessor entities APOLLO COMPUTER, INC. and DIGITAL EQUIPMENT CORP.,  MAJILITE MANUFACTURING, INC., MASSACHUSETTS BAY TRANSPORTATION AUTHORITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, SCHNEIDER AUTOMATION DIVISION OF SQUARE D CO., for itself and on behalf of predecessor entity MODICON, INC., NEW BALANCE ATHLETIC SHOE, INC., PICONICS, INC., ROCHE BROTHERS BARREL AND DRUM CO., INC., THE SHERWIN-WILLIAMS CO., TRW AUTOMOTIVE US LLC, for itself and on behalf of predecessor entity CARR FASTENERS, TUTOR PERINI CORP. f/k/a PERINI CORP., VISHAY INTERTECHNOLOGY, INC., for itself and on behalf of its subsidiary VISHAY BLH INC. f/k/a BLH ELECTRONICS, INC. (A DELEWARE CORPORATION), W.R. GRACE & CO.,<br><br>                Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## INTRODUCTION

1.  This action involves environmental contamination at the Sutton Brook Disposal Superfund

Site located in Tewksbury, Massachusetts ("the Site").  The Commonwealth of Massachusetts ("the

2

Commonwealth") seeks recovery of costs incurred for the assessment, containment, and removal of oil or hazardous materials at the Site and a declaratory judgment that the defendants are liable for future costs to be incurred by the Commonwealth in connection with the Site.  The Commonwealth also seeks a permanent injunction requiring the defendants to remediate the Site, including the placement of deed restrictions on property within the Site. In addition, the Commonwealth seeks to recover damages for injury to, destruction of, or loss of natural resources at the Site, including the reasonable costs of assessing and evaluating such injury, destruction, or loss.  The Commonwealth brings this action pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. § 9601 et seq. ("CERCLA"), and the Massachusetts Oil and Hazardous Material Release Prevention and Response Act, M.G.L. c. 21E ("c. 21E").

## JURISDICTION AND VENUE

2.   This court has jurisdiction to hear this action and to grant the relief requested pursuant to CERCLA § 113(b), 42 U.S.C. § 9613(b).  This court has pendent jurisdiction over the claims arising under Massachusetts law.

3.   Venue is proper in the District of Massachusetts because it is the district in which the release of hazardous substances occurred, 42 U.S.C. § 9613(b), and because it is the district in which the claims arose, 28 U.S.C. § 1391(b).

## PARTIES

4.   The plaintiff is the Commonwealth, acting by and through the Attorney General on behalf of the Secretary of Energy and Environmental Affairs, in his capacity as trustee for the Commonwealth's natural resources ("Commonwealth Trustee"), and the Department of Environmental Protection ("the Department").

5. The Department, which has offices at One Winter Street, Boston, Massachusetts, is the Commonwealth agency primarily responsible for administering various environmental statutes including c. 21E.

6. The Attorney General, who has her office at One Ashburton Place, Boston, Massachusetts, is the chief legal officer of the Commonwealth. She is authorized to bring this action and to seek the relief requested pursuant to M.G.L. c. 12, §§ 3 and 11D and c. 21E, § 11.

7. Defendant, Town of Tewksbury, is a former operator of the Site.

8. Defendants, Browning-Ferris Industries, Inc. (Massachusetts), Barry Bros., Inc., Greenwood Disposal Company, Inc., Miller Disposal Services, Inc., Allied Waste Systems, Inc., Reliable Rubbish Disposal, Inc., BFI Waste Systems of North America, LLC, New England Nuclear Corp., Waste Management of Massachusetts, Inc., V. Canelas Co., Inc., Waste Management Disposal Services of Massachusetts, Inc., SCA Disposal Services of New England, Inc. – Eastern Division, Waste Management of New Hampshire, Inc., P&T Container Service Co., Inc., are each waste transportation companies that have transported waste to the Site or are their successor entities (the "Transporters").

9. Each of the Defendants not named in the previous two paragraphs are companies who have arranged for waste to be transported to the Site or are their successor entities (the "Generators").

## **FACTS**

### **The Site**

10. The Site is located off of South Street on the eastern boundary of Tewksbury, Massachusetts, and is roughly coextensive with the Rocco's Disposal Area. The Site includes several parcels totaling approximately 100 acres, a small portion of which extends into Wilmington, Massachusetts.

11. The Site contains essentially three areas of contamination: an approximately 40-acre landfill, an area of buried drums, and an area that formerly contained a garage and open storage area.

12. Sutton Brook flows through the Site and splits the landfill into two lobes. There are also wetlands and a small pond at the Site.

## Operations at the Site

13. Waste disposal activities were in progress at the Site at least by 1957, when a portion of the Site was designated as a temporary disposal area by the Tewksbury Board of Health. In 1961, the temporary designation was modified to permit its use as a sanitary landfill for municipal waste.

14. In 1979, the Commonwealth ordered that the landfill at the Site be shut down for failures to comply with the terms of its designation. Waste continued to be accepted at the Site until 1988.

15. Since at least 1970, transporters, including the Transporters, have collected waste from hazardous waste generators, including the Generators, and disposed of it at various locations at the Site. This waste included petroleum hydrocarbons, polycyclic aromatic hydrocarbons, metals, volatile organic compounds—including benzene, 1,1,1–trichloroethane, trichloroethylene, 1,1-dichloroethane, toluene, tetrachloroethylene, ethylbenzene, trimethylbenzenes, 1,4-dioxane, tetrahydrofuran, 4-methyl-2 pentanone, 2-butanone, phenols, n-hexane, dichlorofluoromethane, and xylenes—semi-volatile organic compounds—including (bis(2-ethylhexyl)phthalate, di-n-octylphthalate, and naphthalene—pesticides, and polychlorinated biphenyls. As a result of this disposal, these substances came to be located on the Site, including in the groundwater, surface water, sediment, soil, and air.

## Contamination and Response Actions Taken at the Site

16. Beginning in about 1983, the Department began assessment activities at the Site in order to determine the presence, scope, and magnitude of potential contamination at the Site. Through this

5

assessment work the Department discovered a variety of contamination at the Site, including buried drums, contaminated soils and contaminated groundwater.

17. At the Department's request, the United States Environmental Protection Agency ("EPA") performed a preliminary assessment/site investigation at the Site in 1999. During 2000 and 2001, EPA excavated and removed contaminated drums, soils, and other material from the Site.

18. On June 14, 2001, the Site was listed on the National Priorities List ("NPL") pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605. The NPL is set forth at 40 C.F.R. Part 300, Appendix B.

19. In 2004, pursuant to an agreement reached with EPA, certain Defendants commenced a Remedial Investigation and Feasibility Study ("RI/FS") for the Site.

20. In September 2007, EPA signed a Record of Decision ("ROD"), with which the Commonwealth has given its concurrence, specifying the remedial action for the Site based upon the findings of the RI/FS. The remedy chosen by EPA consists of several components, including excavation of contaminated soils and sediments, capping of landfill areas, and collection, treatment, and monitoring of contaminated groundwater.

21. As a result of the releases or threat of release of hazardous substances and/or hazardous materials at the Site, there has been injury to, destruction of, and/or loss of natural resources, including surface water, groundwater, wetlands, and wildlife, at the Site. The Commonwealth Trustee has incurred and will continue to incur costs in connection with the injury to natural resources at the Site, including costs for assessing the extent of injury to, destruction of, or loss of natural resources.

22. In response to the releases and threatened releases of oil or hazardous materials and/or hazardous substances at the Site, the Department has incurred in excess of $646,000 in costs.  The Department will continue to incur costs in response to the contamination at the Site.

## FIRST CLAIM FOR RELIEF
### Cost Recovery and Natural Resources Damages Under CERCLA

23. The Commonwealth realleges and incorporates by reference the allegations of Paragraphs 1-22 as if they were restated in full.

24. Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1), provides that the owner or operator of a vessel or a facility shall be liable for all costs of removal or remedial action incurred by the state, as well as for damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss, resulting from a release or threat of release of hazardous substances from such vessel or facility.

25. Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), provides that any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances shall be liable for all costs of removal or remedial action incurred by the state, as well as for damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from a release or threat of release of hazardous substances from such vessel or facility.

26. Section 107(a)(4) of CERCLA, 42 U.S.C. § 9607(a)(4), provides that any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for all costs of

7

removal or remedial action incurred by the state, as well as for damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from a release or threat of release of hazardous substances from such vessel or facility.

27. The Site is a "facility" within the meaning of sections 101(9) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(9) and 9607(a).

28. Petroleum hydrocarbons, polycyclic aromatic hydrocarbons, metals, volatile organic compounds—including benzene, 1,1,1–trichloroethane, trichloroethylene, 1,1-dichloroethane, toluene, tetrachloroethylene, ethylbenzene, trimethylbenzenes, 1,4-dioxane, tetrahydrofuran, 4-methyl-2 pentanone, 2-butanone, phenols, n-hexane, dichlorofluoromethane, and xylenes—semi-volatile organic compounds—including (bis(2-ethylhexyl)phthalate, di-n-octylphthalate, and naphthalene—pesticides, and polychlorinated biphenyls are "hazardous substances" within the meaning of sections 101(14) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(14) and 9607(a) and 40 C.F.R. 302.4.

29. Actual or threatened releases of hazardous substances occurred and continue to occur at the Site within the meaning of sections 101(14) and (22) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(14) and (22) and 9607(a).

30. There has been injury to, destruction of, or loss of natural resources at the Site within the meaning of sections 101(16) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(16) and 9607(a).

31. As a result of the releases and threatened releases of hazardous substances from the Site, the Commonwealth incurred and will continue to incur response costs within the meaning of sections 101(25) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(25) and 9607(a). The costs incurred by the Commonwealth in connection with the Site are not inconsistent with the National Contingency Plan,

promulgated under section 105(a) of CERCLA, 42 U.S.C. § 9605(a), and codified at 40 C.F.R. Part 300.

32. The Town of Tewksbury was an "operator" of the Site within the meaning of section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2) at a time when hazardous substances were disposed of at the Site.

33. The Transporters are persons who accepted hazardous substances for transport to a disposal facility or site they selected, from which there has been releases and threatened releases of a hazardous substance that caused the incurrence of response costs within the meaning of section 107(a)(4) of CERCLA, 42 U.S.C. § 9607(a)(4).

34. The Generators are persons who by contract, agreement, or otherwise, arranged with a transporter for transport for disposal or treatment of hazardous substances they owned or possessed, by some other entity at a facility operated by another entity and containing such hazardous substances within the meaning of section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

35. Pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a), the Defendants are liable to the Commonwealth for all response costs incurred and to be incurred by it responding to the releases and threatened releases of hazardous substances from the Site.

36. Pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a), the Defendants are liable to the Commonwealth for damages for injury to, destruction of, or loss of natural resources at the Site, including the reasonable costs of assessing such injury, destruction, or loss.

### SECOND CLAIM FOR RELIEF
### Cost Recovery and Injunction Under c. 21E
### and the Massachusetts Contingency Plan

37. The Commonwealth realleges and incorporates by reference the allegations of Paragraphs 1-36 as if they were restated in full.

38. Section 4 of Chapter 21E authorizes the Department to take response actions whenever there is a release or threat of release of oil or hazardous material into the environment.

39. Section 5(a)(1) of Chapter 21E provides that the owner or operator of a vessel or a site from or at which there is or has been a release of oil or hazardous material is liable, without regard to fault, to the Commonwealth for all costs of assessment, containment, and removal incurred relative to the release, as well as for all damages for injury to and for destruction or loss of natural resources, including the costs of assessing and evaluating such injury, destruction or loss, incurred or suffered as a result of such release.

40. Section 5(a)(3) of Chapter 21E provides that any person who by contract, agreement, or otherwise, directly or indirectly, arranged for the transport, disposal, storage or treatment of hazardous material to or in a site or vessel from or at which there is or has been a release or threat of release of hazardous material is liable, without regard to fault, to the Commonwealth for all costs of assessment, containment, and removal incurred relative to the release, as well as for all damages for injury to and for destruction or loss of natural resources, including the costs of assessing and evaluating such injury, destruction or loss, incurred or suffered as a result of such release.

41. Section 5(a)(4) of Chapter 21E provides that any person who, directly, or indirectly, transported any hazardous material to transport, disposal, storage or treatment vessels or sites from or at which there is or has been a release or threat of release of such material is liable, without regard to fault, to the Commonwealth for all costs of assessment, containment, and removal incurred relative to the release, as well as for all damages for injury to and for destruction or loss of natural resources, including the costs of assessing and evaluating such injury, destruction or loss, incurred or suffered as a result of such release.

42. The Site is a "site" within the meaning of c. 21E, §§ 2 and 5.

43. Petroleum hydrocarbons, polycyclic aromatic hydrocarbons, metals, volatile organic compounds—including benzene, 1,1,1–trichloroethane, trichloroethylene, 1,1-dichloroethane, toluene, tetrachloroethylene, ethylbenzene, trimethylbenzenes, 1,4-dioxane, tetrahydrofuran, 4-methyl-2 pentanone, 2-butanone, phenols, n-hexane, dichlorofluoromethane, and xylenes—semi-volatile organic compounds—including (bis(2-ethylhexyl)phthalate, di-n-octylphthalate, and naphthalene—pesticides, and polychlorinated biphenyls are "hazardous materials" within the meaning of Chapter 21E, §§ 2 and 5 and 310 C.M.R. 40.1600.

44. There have been and continue to be "releases" and "threats of releases" of hazardous materials at or from the Site within the meaning of Chapter 21E, §§ 2 and 5.

45. There has been injury to and destruction or loss of natural resources at the Site within the meaning of Chapter 21E, § 5.

46. The Department has incurred and will continue to incur costs of "assessment," "containment," or "removal" within the meaning of Chapter 21E, §§ 2 and 4.

47. The Commonwealth Trustee has incurred and will continue to incur costs of assessing and evaluating the injury, destruction or loss of natural resources at the Site.

48. The Town was an "operator" of the Site within the meaning of Chapter 21E, §§ 2 and 5.

49. The Transporters are persons who directly or indirectly, transported hazardous material to disposal, storage or treatment sites from or at which there is or has been a release or threat of release of such material within the meaning of Chapter 21E, § 5.

50. The Generators are persons who by contract, agreement, or otherwise, directly or indirectly, arranged for the transport, disposal, storage or treatment of hazardous material to or in a site or vessel from or at which there is or has been a release or threat of release of hazardous material within the meaning of Chapter 21E, § 5.

51. Pursuant to c. 21E § 5, the Defendants are liable to the Commonwealth without regard to fault for up to three times the costs of assessment, containment, and removal incurred and to be incurred by the Department pursuant to § 4.

52. Pursuant to c. 21E § 5, the Defendants are liable to the Commonwealth for all damages for injury to and for destruction or loss of natural resources at the Site, including the costs of assessing and evaluating such injury, destruction or loss.

53. Pursuant to c. 21E and its regulations, the Massachusetts Contingency Plan, the Commonwealth is entitled to equitable relief, including injunctive relief, for the placement of deed restrictions on the Site.

## PRAYER FOR RELIEF

WHEREFORE, the Commonwealth requests that this court:

1.      Order the Defendants to reimburse the Commonwealth the full amount of all costs expended by it assessing, containing, and removing hazardous substances and hazardous materials at and from the Site;

2.      Declare the Defendants liable to the Commonwealth for all future costs to be incurred by it assessing, containing, and removing hazardous substances and hazardous materials at and from the Site;

3.      Order the Defendants to reimburse the Commonwealth for damages for injury to and for destruction or loss of natural resources, including the costs of assessing and evaluating such injury, destruction, or loss incurred as a result of such release; and

4.  Order the Defendants to remediate the Site, including the placement of restrictions where appropriate; and

5.  Grant such other and further relief as the court deems appropriate.

                                          Respectfully Submitted,

                                          COMMONWEALTH OF MASSACHUSETTS,

                                          By its attorney,

                                          MARTHA COAKLEY
                                          ATTORNEY GENERAL

                                               /s/ Louis M. Dundin
                                          Louis M. Dundin, BBO #660359
                                          Assistant Attorney General
                                          Environmental Protection Division
                                          Office of the Attorney General
                                          One Ashburton Place
                                          Boston, MA 02108

Dated: December 22, 2009                (617) 963-2433 – louis.dundin@state.ma.us